**SO ORDERED.**

**SIGNED January 05, 2012.**



_____
HENLEY A. HUNTER
UNITED STATES BANKRUPTCY JUDGE

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

IN RE:
    ANTHONY NEAL EDWARDS                CASE NO. 11-80962

IN RE:
    CARL BELL                                         CASE NO. 11-81364

### REASONS FOR DECISION

These matters come before the Court on Objections to Confirmation filed by the Standing Chapter 13 Trustee. These are core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (L) and (O). This Court has jurisdiction pursuant to 28 U.S.C. §1334 and by virtue of the reference of the District Court pursuant to Local District Court Rule 83.4.1 incorporated into Local Bankruptcy Rule 9029.3. No party has sought to withdraw the reference, nor has the District Court done so on its own motion. The Court makes the following findings of fact and conclusions of law in accordance with F.R.B.P. 7052. Pursuant to same, the Objections to Confirmation filed by ths Standing Chapter 13 Trustee are OVERRULED.

*History of the Edwards Case*

Anthony Neal Edwards filed a voluntary petition and Chapter 13 plan on July 22, 2011. The hearing on confirmation was originally set for September 15, 2011. Objections to confirmation were filed on behalf of JP Morgan Chase Bank, N.A., (Docs. #15,16) and by the Standing Chapter 13 Trustee (Doc. #17). The latter objection, in pertinent part, asserted that the plan failed to meet the "liquidation test," in that the debtor owned a 2009 Trailer valued at $1,000.00 and an outstanding security deposit of $150.00, for a total liquidation value of $1,150.00; thus, the Trustee asserted, the amount of $163.97 to be paid to the unsecured creditors was insufficient. Debtor filed a "Response to the Objection to Confirmation of Plan," asserting that the "liquidation value" requirement of 11 U.S.C. §1325(a)(4) is satisfied by payments of $2,900.00 to the unsecured claims of the Internal Revenue Service, Louisiana Department of Revenue and general unsecured creditors. (Doc.#19) A preliminary hearing on Confirmation was held as scheduled on September 15, 2011, where after, debtor was afforded an opportunity to amend the plan to address the objections. (Doc. #21). After the First Amended Plan was filed on September 29, 2011, and noticed on an "if and only if" basis for October 27, 2011, J.P. Morgan Chase withdrew its objections to Confirmation (Docs. #27,30), leaving the sole objection to confirmation of the Amended Plan being that of the Chapter 13 Trustee, who again objected on the liquidation value, asserting this time that the plan only provides $75.58 to the unsecured creditors (Doc.# 32).

The First Amended Plan filed by the debtor in Edwards provides as follows:

**C. PRIORITY OR SPECIAL CLASS CLAIMS.** After secured claims, the priority claims listed below will be paid prior to all claims of lower priority indicated below:
Internal Revenue Service $2,811.17.
**D. GENERAL UNSECURED CLAIMS.** Unless listed above, all other claims listed on Schedule F as unsecured, as undersecured on Schedules D and E, or listed below

2

will be treated as General Unsecured Claims and will receive a minimum of 0% of
the claims. Internal Revenue Service $ 26

Debtor's counsel again responded that the "liquidation value" requirement of §1325(a)(4) is satisfied by payments of $2,812.00 to the unsecured, priority claims of the Internal Revenue Service and general unsecured creditors, citing the formula at Appendix A in *in re Hieb,* 88 B.R. 1019 (Bankr. S.D. 1988)(Doc. #33). Memoranda in support of the positions of both the Standing Chapter 13 Trustee as well as debtor were filed. (Docs. #37,39).[1]

*History of the Bell Case*

Carl Bell and Rachel Bell filed a voluntary petition and Chapter 13 plan on October 6, 2011. This plan, similar to the plan in Edwards, proposes payments as follows:

> **C. Priority or Special Class Claims**. After Secured claims, the priority claims listed below will be paid prior to all claims of lower priority indicated below:
> Internal Revenue Service               $10,700.00
> LA Dept. of Revenue                    $    800.00
> **D. General Unsecured Claims**. Unless listed above, all other claims listed on Schedule F as unsecured, as undersecured on Schedules D and #E, or listed below will be treated as General Unsecured Claims and will receive a minimum of 0% of the claims.
> Consumer Portfolio Services (Undersecured)    $ 4708.00

## APPLICABLE LAW

In the Edwards memorandum, the Chapter 13 Trustee's Objection argues that the amount paid to the priority unsecured class cannot be considered as "property to be distributed under the plan on account of each allowed unsecured claim," asserting:

> "It was not Congress's intent to allow a payment to creditors receiving priority status to be counted as payment to unsecured creditors in a Chapter 13 Bankruptcy."

---

[1] Objections that have been resolved or that are not pertinent to the issues before the Court are omitted.

(11 U.S.C. §1325(a)(4); Case no. 11-80962, Doc. #39.) The Trustee further argues that the provision in §1322(a)(2), which requires that a chapter 13 plan "provide for the full payment, in deferred cash payments, of all claims entitled to priority under Section 507," unless otherwise agreed, is evidence that Congress intends that priority claims payments not be considered in the liquidation analysis of §1325(a)(4).

Essentially, the Chapter 13 Trustee is reading the words "non-priority, general" into §1325(a)(4) before the word "unsecured," clearly going beyond the United States Supreme Court directive of beginning with the language of the statute. The first step in a statutory construction case is to determine whether the language at issue has a plan and unambiguous meaning with regard to the particular dispute in the case. The inquiry ceases in a statutory construction case if the statutory language is unambiguous and the statutory scheme is coherent and consistent. *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 462, 122 S.Ct. 941 (2002)("This statute does not contain conflicting provisions or ambiguous language. Nor does it require a narrowing construction or application of any other canon or interpretative tool. 'We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)(*quoting Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1982))." In no way does the general requirement of full plan payment to claims afforded priority class under §507 (and priority distribution under §726) in §1322(a)(2) conflict with or render incoherent the protection afforded the unsecured creditors in §1325(a)(4).

For confirmation to occur under 11 USC §1325(a)(1),(2) and (3), a plan must comply with

4

the requirements of Chapter 13 and the other provisions of Title 11; any filing fees or other charges due under chapter 123 of title 28, or by the plan, due prior to confirmation must be paid, and the plan must have been filed in good faith and not be proposed by any mean forbidden by law. Next, the plan must meet the requirement of 11 USC §1325(a)(4):

> "[T]he value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of this title on such date[.]"

This test is traditionally referred to as the "best interests of creditors test," and one of two prerequisites for the protection of unsecured creditors. Essentially, the court is required to perform a hypothetical Chapter 7 liquidation on the effective date of the plan of the debtor's estate.[2] The court must require that the Chapter 13 plan offer the holder of each allowed unsecured claim property, including any deferred payments, of a present value not less than the liquidation value of such claim (by capitalizing the payments). Next, the court must ascribe a liquidation value to all non-exempt property of the estate (as defined in §541) as well as to any property likely to be recovered by the use of the Chapter 7 Trustee's avoidance powers, and then make an adjustment for the administrative expenses incurred in a Chapter 7 case (for example, costs of sale, and capital gains taxes that might be incurred by the trustee in disposal of property). *See* Colliers on Bankruptcy, 16th Ed. ¶1325.05[2][a]-[d].

At the end of day, the court must be mindful of the liquidation expenses, and where the administrative expenses of a sale of debtor's non-exempt assets, including the costs of sale, do not exceed "several thousand dollars or so," and thus be consumed in the process, most courts and the

---

[2]This analysis is not aided by the fact that there is some doubt about the meaning of the term of art "effective date of the plan."

United States Trustees would discourage administration of such estates by a Chapter 7 trustee where unsecured creditors would receive no distribution. The same result obtains in Chapter 13 cases where debtors hold only nominal assets. Such liquidation value must also be adjusted for lien claims against the property in Chapter 7, as well as the rights of those creditors entitled to a priority of distribution over those allowed unsecured claims whose claims are weighed in this process. *See* Colliers on Bankruptcy, 16th Ed. ¶1325.

It follows, then, that an understanding of the distribution scheme under §1325 requires an understanding of the distribution scheme contemplated in §1322(a)(2), and in turn, §507. Debtor's memorandum succinctly summarizes the intention of Congress in cases where, as here, special treatment of priority creditors is required. The memo observes:

> The Bankruptcy Code outlines the order of payment of claims from funds in a Chapter 7 bankruptcy case. 11 U.S.C. §507 outlines the priority in which the expenses and claims should be paid. 11 U.S.C. §1322(a)(2) requires that the plan pay in full the claims listed as priority in §507. 11 U.S.C. §726 outlines the distribution of the estate in a Chapter 7 which specifically notes that the first payment shall be to claims of the kind specified in the §507 of this title. According to 11 U.S.C. §507(8), taxes which have come due three years prior to filing the petition shall be paid eighth in priority.

(Debtor's Memorandum, Doc. #37, pg. 3.)

Debtor's memorandum then suggests that the hypothetical liquidation analysis can best be illustrated by looking no further than what happens in a Chapter 7 bankruptcy in this district and division, suggesting that if the court were to adopt the position of the trustee, it must ignore precedent. Debtor cites five Trustee's Final Reports ("TFR") and attaches copies of same to the memorandum. These various exhibits in fact demonstrate the requisite analysis in process. Debtor's memorandum properly asserts that a Chapter 7 Trustee would not administer an outstanding $150.00

security deposit and the interest in a homemade trailer valued at $1,000.00 in Edwards, or the $1,750.00 vehicle at issue in Bell.[3]

The Trustee, however, argues that a different result is required pursuant to the Chapter 13 Statement of Calculation of Commitment Period and Disposable Income ("Form B22C"). This argument conflates the distribution test with the disposable income test. While the best interest of creditors test discussed above applies relative to each allowed unsecured claim, it dates, in somewhat different wording, back to Chapter XIII of the former Bankruptcy Act, §§651 &652(A). The disposable income test (or, put differently, the minimum level of payments under the plan, other than that arising under the best interest of creditors test in §1325(a)(5)), was first enacted in 1984, together with the "good faith" standard, found in §1325(a)(3). These did not set a minimum amount of payments to unsecured creditors, permitting the courts to interpret "good faith" in accordance with historical precedent. The proposal arose from a suggestion from the National Bankruptcy Conference that the amount a debtor could reasonably afford to pay would be both a floor and a ceiling for plan payment, otherwise, should the debtor's payments be too high, the plan would become infeasible. *See* Colliers on Bankruptcy, 16th Ed. ¶1325.11, *citing* Oversight Hearings on Personal Bankruptcy Before the Subcommittee on Monopolies and Commercial Law of the House Committee on the Judiciary, 97th Cong, 1st and 2d Sess. 181-223.

In the same enactment, zero payment plans were deemed appropriate if the ability-to-pay test is satisfied, since the court maintains the power to raise payments on an appropriate motion if there is a change in circumstances. The test for the ability-to-pay is raised under U.S.C. §1325(b)(1)(A)

---

[3] The $150.00 security deposit is listed on Schedule B, ¶3, as relating to a "public utilities, telephone companies, landlords, and others."

7

and (B). Under (A), if the trustee or a holder of an allowed unsecured claim objects to confirmation, the court may not approve the plan unless, as of the effective date, the value of the property to be distributed under the plan is not less than the amount of such claim; or, put differently, whether the claim of the objecting creditor is paid in full (as opposed to *all* unsecured claims, since the objecting creditor may have been separately classified). Alternatively, the trustee may raise the objection, in which event the trustee appears to be raising the issue on behalf of *all* the unsecured creditors, but the determination of the amount to be paid need not address whether or not the plan payments have a present value equal to the full amount of the unsecured claims. *See* Colliers on Bankruptcy, 16th Ed. ¶1325.11

Thus, Form B22C is used as a calculation of the "applicable commitment period" and debtor's *projected* disposable income, the new concepts added by the 2005 amendments of BAPCPA. As summarized by debtor's counsel:

> "Form B-22C is nothing more than a starting point to determine whether there is substantial abuse under [11 U.S.C.] §707(b) and to determine the 'applicable commitment period.' Form B-22C has nothing to do with the liquidation of a hypothetical Chapter 7."

(Debtor's Memorandum, Doc. #37, pg. 5.)

The same result must obtain as to the Trustee's suggestion that payments to unsecured claims having priority status discriminates against general unsecured creditors unless all disposable income as shown on line 59 of Form B22C is must be devoted to paying the latter in full before the plan may be confirmed turns the priority scheme contemplated in §507 on its head. Indeed, 11 U.S.C. §1325(b)(1)(A) expressly contemplates that an unsecured claim may have been classified differently. *See* Colliers on Bankruptcy, 16th Ed. ¶1325.11[3]. Finally, it should be noted that the reliance by

8

the Standing Chapter 13 Trustee on the case of *In re Christian*, 25 B.R. 438 (Bankr. D.N.M. 1982) for the proposition that §1325(a)(4) and/or Form B222C somehow compel the result contemplated by the Trustee is misplaced. The trustee argues that the priority status of certain claims under 1322(a)(2), which by its terms requires "full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim[,]" somehow results in those claims being subordinated to the general non-priority unsecured claims, which must then be paid in full, for the purpose of the liquidation test analysis, must fail. *See* 11 U.S.C. §§ 507, 726. Similarly, the fact that payments to pre-petition priority claims are permissible deductions on line 49 on Form B22C (at least for those debtors who must complete Parts IV and V thereof) does not require the resulting amount at line 59 to be recalculated to the prejudice of the distribution scheme contemplated by the code for the disposable income analysis under 1325(b)(1)(A)and/or(B).

## CONCLUSION

The Objections of the Standing Chapter 13 Trustee as to the liquidation test are **OVERRULED.** A separate and conforming order shall be entered.

\* \* \*

9